MINIMUM TRACK CLEARANCES, IN RE.

Public Utilities Commission.

No. 26531. Decided February 24, 1958.

*Finding And Order With Respect To Rehearing*

The Commission coming now to consider the above entitled matter; its Orders and Entries previously issued in connection therewith, and, especially the modification of the existing Order of November 27, 1957, which has been suggested to this Commission by the Respondent railroads and agreed to by the Intervening Transportation Brotherhoods, and being otherwise fully advised in the premises, finds:

(1) That the change in the third ordering paragraph of this Commission's Order of November 27, 1957, which has been suggested to this Commission by the Complainant railroads in their written answer of December 23, 1957, is well made and should be adopted;

(2) That said change so contained in the Railroad's answer is agreeable to the Intervening Transportation Brotherhoods, as indicated by their counsel's letter of February 12, 1958; and

(3) That this Commission's previously issued Order of November 27, 1957, should be reissued so as to incorporate the change suggested by Complainants and concurred in by Intervenors; and

(4) That said Order should be reissued to read as follows:

*Summary of Evidence*

The Commission hereby adopts as its own as if fully rewritten herein, the Summary of the Testimony previously made in connection with this proceeding, which Summary is set forth in detail in this Commission's previously issued Order of November 27, 1957, at Pages 1 to 9 inclusive of that Order. In the interest of brevity, such Summary of Testimony will not be physically repeated in this Order.

*Discussion*

The Commission hereby adopts as its own as if fully rewritten herein the "Discussion" as the same is contained in this Commission's previously issued Order of November 27, 1957, and for purposes of clarity and completeness, hereby repeats that Discussion:

A consideration of the above summary and of the 721 pages of testimony upon which such summary is based presents in some detail the operations of and the working conditions in railroad classification yards in this state. In this proceeding, particular interest is directed to railroad track clearance or lateral track clearance, track curvature, and track angles. These facets of track construction as they are related to the "protection, welfare, and safety of railroad employees and the traveling public" (Section 4905.04, Revised Code), constitute the issue in this case. In other words, within the purview of said Section 4905.04, Revised Code, and on the basis of the evidence presented at five days of hearing, should the provisions, or substantially those provisions, in the Commission's proposed Order be adopted? It is to be noted that the proposed provisions apply only to new railroad track construction or reconstruction of yard tracks in Ohio.

Essentially the same proposal was previously considered by this Commission and its determination thereon was made without presentation of or consideration of any evidence. In reversing this prior order, the Supreme Court of Ohio in the case of *The Akron & Barberton Belt Rd. Co. et al.* v. *Public Utilities Commission of Ohio*, 165 Ohio St., 315, stated as follows in the syllabus:

"4. By Section 4905.04, Revised Code, the Public Utilities Commission is given the authority to determine as to track clearances for railroad yards, but, under that section, it has no power to promulgate an order without a full hearing and the production of evidence to support the findings upon which the order is based.

"5. Section 4909.30, Revised Code, authorizes the Public Utilities Commission, upon application of any person or any railroad and after notice to the parties in interest and an opportunity for them to be heard, to rescind, alter or amend any order made by the Commission with respect to a railroad, but such statute does not authorize the commission to rescind, alter or amend an order made by it with respect to a railroad without the production of evidence justifying such rescission, alternation or amendment."

One of the main questions presented herein is concerned with the minimum track clearance that should be required with

respect to new construction or reconstruction of yard tracks. The 1950 order, previously referred to, stated that ''body tracks shall be spaced not less than 13 feet center to center * * *.'' The proposed order herein would increase this distance to 14 feet. What basis, if any, exists for substantiating such an increase?

At the outset it should be noted that the provisions of the 1950 order were arrived at by negotiation between the railroads and brotherhoods and an agreed order was entered. At no time was evidence advanced at a hearing to support its provisions.

It must be generally recognized that some lateral clearance must exist between adjacent railroad tracks. If there is not, obviously car movement would be obstructed. Furthermore, clearance is necessary to afford a space or area in which trainmen, occupied with classifying and switching cars, may walk, effect repairs, make car couplings, give signals and accomplish their other duties.

The Functions accomplished in railroad classification yards have remained essentially the same over the years; and, the hazards attendant to those operations are not new in railroading. These include the presence of debris, such as coal, metal scrap and other materials, which fall from open cars into areas between tracks and cause obstructions and obstacles to be in the pathway of the working trainmen. Such obstructions make for uncertain footing and increase the hazard of falling or stumbling against stationary or moving freight cars. Employees work in such yards on a 24-hour basis in all seasons of the year and find the area between the tracks piled with snow which has been cleared from adjacent tracks. When partially melted and frozen this obstacle makes for particularly dangerous footing. Restricted general visibility in railroad yards due to inadequate lighting or no lighting at all, plus inclement weather conditions also contribute to reduce an employee's awareness of obstacles. The necessity of wearing bulky and heavy outer clothing in winter weather increases the width or space of a man's size and thus reduces the clearance afforded to him.

Cars of excessive widths, cars with lading which protrude or extend beyond the sides, and ''bad order'' or ''bulged'' cars

are found in classification yards and reduce the clearance between tracks. Clearance information, pertaining to excessive dimensioned cars, is transmitted through an extensive communication system to yardmasters, and yard crews are thus forewarned of the approach and presence of such cars on tracks upon which they may be working. Different railroad systems have varying width limits above which clearance warnings are issued. For example, the Pennsylvania Railroad uses 11 feet or greater when truck centers are 40 feet or less and 10 feet, 6 inches when truck centers are in excess of 40 feet. While the crews working on the tracks upon which such cars move are warned of their presence, they frequently are unaware of their movement upon adjacent tracks.

Defective track conditions also contribute to restricted clearances by allowing cars to sway and tilt thereon. Low joints, pumping ties, and uneven track cross levels provide conditions which cause moving cars to have a pronounced side movement. Such a movement could be up to six to eight inches at the top of the cars and somewhat less toward the bottom of the cars. After prolonged use, tracks can move out of alignment so as also to reduce clearance. However, it would appear that constant maintenance by the railroads is pursued in an attempt to minimize such bad track conditions.

A consideration of the size of the equipment moving upon these body tracks reveals that clearance is, or can be, definitely restricted for employees working between or upon cars on adjacent tracks. Two cars with a width of 10 ft. 8 in. upon adjacent tracks, constructed so as to allow 13 ft. lateral clearance, would leave a lateral distance of only 28 inches between such cars. This would yield a space of only four inches on either side of a medium sized man with shoulder width of 20 inches. This distance can be further reduced by use of heavy outer clothing. The testimony also reveals that even more restricted lateral distances can occur in yard operations without any clearance notice being issued. Not to be overlooked, furthermore, is the fact that such clearances can be further reduced by the acknowledged sway and tilt of cars already discussed.

It would seem that a conflict exists with respect to the distance required to give signals within the yards and the ability

to distinguish or interpret same. Operating employees urge the necessity in giving certain signals beyond the width of the body up to four and one-half feet, while a representative of supervisory management was of the opinion that no greater width than a man's body was necessary. Without doubt it would appear reasonable that a greater lateral space would make it easier to transmit clear signals which control the movement of cars within the yards.

A consideration of the above operating factors reveals that a proper and adequate minimum track clearance is directly and immediately related to the protection, welfare and safety of railroad employees. These factors, in addition to certain changes in operation, would indicate that an increase in minimum track clearance to 14 ft. is necessary to insure the measures provided for in Section 4905.04, Revised Code. Over the last several years there has been a sizeable increase in the number of cars with widths of 10 ft. 6 in. and above. While the increase in the number of cars in service between 1950 and 1956 has not been great the percentage of cars in use of 10 ft. 6 in. width and above has increased from 27.09% to 37.5% during the same period. The number of cars of width greater than 10 ft. 8 in. has decreased during this time but the number involved therein is much less than those car sizes showing a substantial increase. It is thus obvious that a greater number of wider cars is moving through classification yards.

The change-over to Diesel power engines has progressed to a marked degree during the last several years. Such units, after the initial power thrust is effected, will start faster and continue moving faster. The danger of frequent shifting of coal and other materials from cars is thereby increased with consequent increased hazards to the employees. Furthermore, although testimony is somewhat conflicting hereon, trains are generally longer and the number of cars handled has increased. Such conditions would be further conducive for providing a safe clearance.

The railroads have shown, and it would seem to be clearly established upon the record, that an increase in minimum track clearance for future construction or reconstruction of yard tracks would result in increased costs. Such costs would be

reflected in greater area requirements or reduced trackage and car capacity. Maintenance costs would probably be increased without, it is stated, any consequent improvement in operational efficiency. The exact cost increase in any situation is, of course, problematical and will vary dependent upon many factors. At the same time, it is recognized that the railroads have effectuated safety programs for the protection of their employees. However, increased track clearance would seem to be requisite to the enhanced protection of railroad employees, despite probable prospective additional costs and extant safety measures effected by the railroads.

The other controversial provisions of the proposed order appear to be without merit. In view of the increased lateral clearance of 14 feet thus proposed, the provision for increased track centers applicable to varying track curvatures, as set forth in paragraph 2 of the proposed order, would seem to be unnecessary, although it is recognized that an "in swing" or "overhand" occurs as cars traverse curved tracks so as to reduce lateral clearance. At the middle ordinate, this reduction will be approximately three inches. The greater lateral clearance of 14 feet would, however, compensate for these conditions according to the record herein.

The record indicates, and the Commission is of the opinion, that the first two provisions of paragraph four of the proposed order should also be deleted. The restriction of track curvature not to exceed 12°34′ through turnouts or otherwise is largely applicable to operations of large steam locomotives with rigid wheel bases. A railroad witness testified that with the advent of Diesel engines this requirement was arbitrarily low and has no relationship to present day operational facilities. Inasmuch as the railroads motive equipment has to a great extent been dieselized and the proposed provision has not been shown to be related directly to employees safety, this first provision would appear to be inappropriate to this order. The second provision concerning the angle between a ladder track and body track should also be deleted inasmuch as a railroad engineering witness stated that the competent design of any yard would provide for the conditions attempted to be prescribed therein and, furthermore, no showing was made with respect to relationship thereof directly with employee safety.

The railroad engineering witness expressed satisfaction with the remaining lateral clearances set forth in paragraph 4 of the proposed order with the exception of the 14-foot center to center provision applicable to body tracks. These provisions are applicable to various types of tracks in railroad operations and the clearances therein set forth would seem to be shown to be pertinent to and necessary for employee safety.

*Findings*

The Commission hereby adopts as its own, as if fully rewritten herein, the "Findings" as the same are contained in the Commission's previously issued Order of November 27, 1957. For the purposes of clarity and completeness, the Commission hereby reiterates those Findings as follows:

(1) This Commission has jurisdiction of the subject matter of this proceeding by reason of the provisions of Section 4905.04, Revised Code;

(2) This proceeding was initiated and processed in accordance with the provisions of Section 4909.30, Revised Code;

(3) Minimum lateral clearance between yard tracks and other tracks used in railroad operations in this state is a matter relating to the protection, welfare and safety of railroad employees and the traveling public;

(4) In railroad operations, the amount of clearance is reduced by wide cars, the sway and tilt of moving cars, and protrusions from such cars;

(5) Railroad employees work under adverse weather conditions and sometimes with debris underfoot between stationary and moving cars in such yards and perform repairs, couplings, and signalling in switching and classifying cars, their safety in the performance of such duties requires them not to be adversely restricted by close clearances; and,

(6) Under such operational conditions and with utilization of an increased number of wider cars and Diesel locomotion, which adversely affect clearance, the minimum track clearance of 14 feet in yards will provide greater and safer working conditions.

Order

It is, therefore.

Ordered, That this Commission's previously issued Order

of November 27, 1957, be amended as to its ordering paragraphs as follows:

It is, therefore,

Ordered

(1) That each railroad in the State of Ohio shall comply with the track clearance standards established herein;

(2) That hereafter, on any new railroad track construction or reconstruction of yards in Ohio, the lateral clearance between centers of adjacent and parallel railroad tracks covering main lines, passing tracks, and yard tracks over which switching is performed, shall not be less than 14 feet on tangent tracks and on curved tracks, provided that in specific cases if this Commission, after investigation, shall find that it would be unreasonable to require 14-foot clearance between track centers, it may by Order prescribe lesser clearances;

(3) That tracks constructed on, under, or adjacent to permanent railroad and highway structures, which structures were constructed previous to the date of this Order and were designed to provide less than 14-foot clearances for future tracks, are exempt from the provisions of this Order.

(4) That ladder tracks shall be spaced not less than 15 feet center to center from any parallel track and when such parallel track is another ladder track that it be spaced not less than 18 feet center to center, body tracks shall be spaced not less than 14 feet center to center and when paralleled to a main track or important running track the first body track shall be spaced not less than 15 feet center to center from such track, provided, however, that the Commission upon application, when accompanied by a full statement of the conditions existing and the reasons upon which such permit is predicated, may permit any railroad to construct or reconstruct under such conditions, if any, as the Commission may prescribe, any track or tracks at lesser clearance than herein required, when the judgment of this Commission's compliance with the clearance prescribed herein is unreasonable or unnecessary, and when lesser clearance would not create a condition unduly hazardous to the employees of such railroad; and,

(5) That the provisions of this order shall apply to any railroad as defined in Section 4907.02, Revised Code, in the

construction of new yards or in the reconstruction of existing yards, except any extensions or realignments of existing tracks, after the effective date of this order, and the railroads shall construct said tracks in compliance with the above designated minimum track clearance standards after the effective date of this order, except any extensions or realignments of existing tracks or unless otherwise ordered by the Commission. It is, further

Ordered, That in pursuance of the provisions of Section 111.15, Revised Code, a duly certificated copy of this Order be forthwith filed in the office of the Secretary of State. It is, further

Ordered, That this Order become effective at the earliest date provided by law.

The Public Utilities Commission of Ohio

Entered in Journal    Everett H. Krueger, Jr., Chairman
February 24, 1958    Ralph A. Winter
A true copy:    Edward J. Kenealy
W. E. Herron    Commissioners
W. E. Herron, Secretary